IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE MANOS,

                        Plaintiff,                              3:13-cv-01419-PK

v.                                                              OPINION AND ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff George Manos filed this action on August 13, 2013, seeking judicial review of

the Commissioner of Social Security's ("Commissioner") final decision denying his application

for disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

("the Act"). This court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3).

      Manos argues that the Administrative Law Judge (ALJ) erred (1) in his evaluation of the

medical evidence of record in his findings under Listing 12.07; (2) in his failure to obtain

testimony from a psychological medical expert; and (3) by failing to include Manos's severe

mental impairments, including depression and anxiety, in the assessment of Manos's residual

functional capacity ("RFC"). I have considered the parties' briefs and all of the evidence in the

administrative record. For the reasons set forth below, the Commissioner's final decision is

reversed and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

Manos protectively filed for a period of disability and DIB on March 3, 2010, alleging a

disability onset date of August 15, 1995, and seeking benefits through his last insured date of

December 31, 1998 ("the relevant time period"). Tr. 19.[1]  After his application was denied

initially and upon reconsideration, Manos requested a hearing before an ALJ.

The ALJ hosted three separate hearings on January 10, March 1, and June 5, 2012.[2]

Manos, medical expert Dr. Lawrence Duckler, M.D., and vocational expert ("VE") Richard

Hincks all testified at the first hearing. Tr. 19. At that hearing, the ALJ determined that a

neurologist would be required to properly develop the record regarding Manos's non-physical

conditions so he set a supplemental hearing. Tr. 98–99. At the second hearing, Dr. David

Huntley, M.D., a neurologist, testified and VE Hincks was present but did not testify. Tr. 19.

Dr. Huntley was called away, however, for an emergency procedure and the hearing was set over

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the
administrative record filed herein as docket no. 10.

[2] At the first hearing, the ALJ determined that a neurologist would be required to
properly develop the record regarding Manos's non-physical conditions. Tr. 98–99. At the
second hearing, Dr. David Huntley was called away for an emergency procedure and the hearing
was set over pending his next availability. Tr. 62–64.

pending his next availability. Tr. 62–64. At the third hearing, Dr. Huntley appeared and completed his testimony and another VE, Thomas Weiford, appeared but did not testify. Tr. 19. Manos was represented by counsel at the hearings.

On June 14, 2012, the ALJ issued a decision finding Manos had not been disabled in the relevant time period within the meaning of the Act. *Id.* After the Appeals Council denied review on June 17, 2013, Manos filed a complaint in this court.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.

Page 3 - OPINION AND ORDER

*See Bowen*, 482 U.S. at 140-41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['s ability to work." *Id.* (quoting SSR No. 85-28).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual

Page 4 - OPINION AND ORDER

functional capacity (RFC), based on all of the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[3] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* SSR No. 96-8p.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§

---

[3] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR No. 96-8p.

416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits

if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see*

*also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## SUMMARY OF ADMINISTRATIVE RECORD

Manos was born on January 30, 1956. Tr. 231. Manos filed for DIB for the relevant time

period of August 15, 1995, through December 31, 1998, during which he was between the ages

of 39 and 42. Tr. 19. Manos filed on the basis of both physical and non-physical conditions

including posttraumatic stress disorder, dual identity disorder, left shoulder and right collar bone

injuries, and epilepsy. Tr. 251. Manos is a college graduate with a bachelor's degree in

computer science and mathematics. Tr. 73. He worked as a car salesman from 1987–90, a

paralegal from 1990–95, and a computer teacher from 2003–04. Tr. 252. Manos was

incarcerated in a Washington State correctional facility from October 1995 through 1999. Tr. 72.

Accordingly, the medical evidence of record primarily consists of the records of treating

physicians and examiners at the Washington State Department of Corrections. Tr. 390.

On March 29, 1996, while incarcerated, Manos underwent a psychological examination

by Dr. David Johnston, a psychiatrist. Tr. 396. Manos reported depression, prior substance

abuse, suicidality, and a history of being abused as a child. Tr. 397. Manos admitted to cocaine

abuse during 1976–84, and methamphetamine abuse during 1987–89 and 1995–96. *Id.* Dr.

Johnston diagnosed Manos with depressive disorder NOS, amphetamine abuse, cannabis abuse, a

history of cocaine abuse, borderline personality disorder, and antisocial personality traits. Tr.

398–99.

In May 1996, Manos visited Dr. Johnston for a psychiatric progress report. Tr. 395. Dr.

Johnston noted that Manos was sleeping well, getting along with staff and inmates, and that his affect was full range. *Id.* He spoke with Dr. Johnston about being struck in his left arm and shoulder by a door. *Id.* Manos believed this may have aggravated his pre-existing shoulder injury. *Id.*

In June 1996, Manos visited institutional doctors for his shoulder pain and advised him to use his arm more consistently to prevent additional complications. Tr. 376. Manos's medical charts express that his range of motion was improving and that Manos had followed through with recommended exercises regarding the injury he sustained in the prior month. *Id.*

In August 1996, Manos reported to Dr. Johnston that he was sleeping normally and maintaining a positive mood. Tr. 394. He reported being gratified by his job as a teaching assistant and attested to keeping a generally busy routine. *Id.* Manos listed symptoms of shoulder pain and relative sedation during the early hours of the day from a medicine prescribed by Dr. Johnston, amitriptyline. *Id.*

In November 1996, Manos once again presented to Dr. Johnston and reported that he felt well until the holiday season began to approach, stating that it was instilling feelings of depression within him. Tr. 393. He had no difficulty sleeping, no difficulty with his appetite, and happiness due to a promotion at work. *Id.* Manos reported to Dr. Johnston that he had prepared a computer assembly tutorial video, that he was reading, studying, attending training sessions, and that he was maintaining concentration on his performance at work and in general. *Id.* Dr. Johnston noted that Manos denied having suicidal thoughts, attested to his enjoyment of daily activities, and described Manos's affect as "very bright." *Id.* Dr. Johnson assessed Manos with bouts of situational, rather than seasonal, depression due to being separated from his family

during the holidays. *Id.* Dr. Johnson further noted that Manos's prior claims, made at a time

unclear from the record, regarding attention deficit hyperactive disorder were not credible in light

of his overall performance at work and in classes. *Id.*

In January 1997, Manos presented to Dr. Johnston for a scheduled visit and noted

concerns about his seventeen year old daughter's health problems. Tr. 392. Dr. Johnston noted

that Manos was bright and pleasant, denied having sleep problems, and had been enjoying his

work. *Id.* Dr. Johnston opined that Manos's depression was in remission and that he continued

to suffer only situational stressors. *Id.*

In May 1997, Manos presented to Dr. Johnston with concerns over difficulty with his left

arm and shoulder. Tr. 391. Dr. Johnston noted that Manos had consulted with an orthopedic

physician who did not recommend activity restrictions related to his complaints. *Id.* Manos

reported a good mood, and Dr. Johnston noted that Manos's depression continued to be in

remission, specifically stating that Manos was "bright" and cheerful. *Id.*

Manos suffered his first seizure on May 27, 1997, and three diagnostic tests were

performed in the following three days. Tr. 389. The tests—an MRI, a CT scan, and an EEG—all

returned normal results. *Id.* Manos was started on Dilantin by the correctional facility's medical

providers and his records reflect frequent seizures following that incident. *Id.* Thereafter, Manos

was assessed with an indistinct seizure disorder and mixed anxiety disorder. Tr. 351.

In June 1998, Manos was transferred out of the general prison population after

undergoing a ward admission examination. Tr. 390. Manos repeated his prior report of

difficulties with his left arm and told treating physicians that he was labeled 100% disabled by

the Department of Veterans Affairs due to his previous drug addiction. Tr. 389–90. A

Page 8 - OPINION AND ORDER

physician's assistant opined that Manos's seizures, which had since become frequent, were

pseudoseizures and that his elbow complaints were psychological in nature. Tr. 389. Later EEG

testing provided normal results and no indication of a physical cause for Manos's seizures. Tr.

632, 628.

At the first hearing, Dr. Duckler, a physician, opined that Manos suffers from personality

disorder with antisocial behavior, depressive disorder, and a history of amphetamine abuse. Tr.

80. He noted that Manos has a history of left shoulder rotator cuff repair for recurring

dislocations of the shoulder. *Id.* In response to questions from Manos's counsel, Dr. Duckler

stated that Manos suffered at least 35 pseudoseizures during 1997–98. Tr. 86. Dr. Duckler

further opined that he did not believe Manos conditions, including his frequent pseudoseizures,

met or equaled any of the Listings. Tr. 88. He further noted that the record contains no objective

physical evidence of seizures to support an epilepsy diagnosis, and the pseudoseizure diagnosis

was made in the context of nonspecific EEG examinations and normal CT scan results. *Id.*

At the second and third hearings Dr. Huntley, a neurologist, summarized Manos's

medical record as showing that he suffers pseudoseizures, depression, anxiety disorder, and

problems with his left shoulder. Tr. 26. He explained that pseudoseizures are a psychiatric

condition characterized by expressions of anxiety manifested as physical convulsions. *Id.*

In August 2010, Manos was examined by Dr. Linda Jensen of Disability Determination

Services ("DDS") and Dr. Jensen opined that, during the relevant time period, Manos could (1)

occasionally lift or carry up to 20 pounds and frequently lift or carry up to 10 pounds; (2) he

could stand or walk about 6 hours in an 8-hour workday; and (3) he could sit about 6 hours in an

8-hour workday. Tr. 105–06. Additionally, Dr. Jensen opined that Manos should have avoided

all exposure to workplace hazards. *Id.* DDS Dr. Richard Alley reviewed Manos's case file and agreed with Dr. Jensen's findings. Tr. 115–16.

Later that month, DDS Dr. Bill Hennings reviewed Manos's case file and the medical evidence of record and found insufficient evidence to opine on any mental impairments from which Manos may have suffered during the relevant time period. Tr. 103–04. DDS Dr. Sandra Lundblad reviewed Manos's case file and agreed with Dr. Henning's assessment. Tr. 114.

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Manos had not engaged in substantial gainful activity since the alleged onset date and the date Manos was last insured, December 31, 1998. Tr. 21. At the second step, the ALJ found that Manos had the following severe impairments: psychogenic non-epileptic seizures, anxiety, depression, and status post left shoulder injury with hardware placement in 1975. *Id.* The ALJ additionally noted that Manos had right clavicular fracture with repair, a history of substance abuse, a history of Hepatitis C, obesity, left hand tremor, personality disorder, dissociative identity disorder, bipolar disorder, and posttraumatic stress disorder, all of which the ALJ deemed non-severe. *Id.* Because Manos was deemed to have the above listed severe impairments, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Manos's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 22. The ALJ therefore conducted an assessment of Manos's RFC and found that Manos could perform a limited range of light work, and could perform the following:

He could lift and or carry up to 20 pounds occasionally and up to ten

> pounds frequently. He could stand and walk at least six hours out of
> an eight-hour-workday. He could sit for at least six hours in an eight-
> hour-workday. He should not have climbed ladders, ropes, or
> scaffolding and should not have worked at unprotected heights
> around dangerous machinery. He should never have crawled and he
> should never have balanced on narrow beams. He should not have
> engaged in any overhead lifting with the left arm. He should not have
> used his left arm for more than occasional overhead reachging.

Tr. 23.

At the fourth step of the five-step process, the ALJ found that Manos was capable of

performing his past relevant work as a collections clerk, a paralegal, and a jewelry store

salesman. Tr. 28. As a result of that finding, the five-step analysis concluded at step four and the

ALJ determined that Manos was not disabled during the relevant time period as defined by the

Act. *Id.*

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal

standards and his or her findings are supported by substantial evidence in the record. *See* 42

U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance;

it is such relevant evidence as a reasonable person might accept as adequate to support a

conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Reddick v.*

*Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of

the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

## ANALYSIS

Manos argues that the ALJ erred because he (1) failed to account for an aspect of Dr. Duckler's testimony regarding Listing 12.07; (2) failed to obtain testimony from a psychological medical expert to assist in his evaluation of listing 12.07; and (3) failed to include any mental limitations in his assessment of Manos's RFC. I will analyze these arguments separately.

## I.    The ALJ's Evaluation of Listing 12.07

Manos first argues that the ALJ erred in not finding that the paragraph B criteria for Listing 12.07 were satisfied based on the medical evidence of record. Pl.'s Brief, #13, 6. Manos argues, in the alternative, that the ALJ erred by failing to further develop the record regarding the nature of Manos's pseudoseizures. *Id.*

### A.    Analysis of Paragraph B Criteria for Listing 12.07

Manos claims the ALJ erred in his evaluation of Listing 12.07 by failing to consider Dr. Duckler's medical testimony at the hearing regarding Manos's health impairments and the paragraph B criteria used to determine severity of mental impairments. 20 C.F.R. § 404.1520a.

The steps set forth in 20 C.F.R. § 404.1520a are employed by ALJs at step two of the five-step evaluation process to assess whether a mental impairment is severe, and whether such an impairment meets or equals a listed impairment at step three. "That step determines whether a claimant is disabled by comparing the claimant's impairment to impairments listed in an appendix to the regulations (listed diagnoses)." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 20 C.F.R. § 416.925 (internal quotation marks omitted).

Each listed diagnosis consists of clinical findings listed under paragraph A ("paragraph A criteria") and functional limitations listed under paragraph B ("paragraph B criteria"). Together, the criteria define the severity of the impairment. Each listed diagnosis requires that a claimant exhibit a set number of criteria in both paragraph A and paragraph B in order to be found disabled. The criteria may themselves require the claimant to exhibit a set number of characteristics. If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, the claimant is conclusively presumed to be disabled. *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990) (citations omitted); *Baxter v. Sullivan*, 923 F.2d at 1395; 20 C.F.R. §§ 404.1520(d), 416.920(d); *see generally Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

The specific process of evaluating the paragraph B criteria involves rating the four functional categories of activities of daily life; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 404.1520a. The paragraph B criteria are used only at steps two and three of the sequential evaluation process to determine the severity of the impairment and whether the impairment equals a listed impairment, and are not used as a part

of the RFC assessment. *See Ramirez*, 8 F.3d at 1452.

Here, the ALJ rated the paragraph B criteria to determine whether Manos had an impairment that equaled a listed impairment. Tr. 22. The ALJ determined that Manos failed to show at least two of the paragraph B criteria, as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). In order to satisfy the paragraph B criteria, Manos would have had to manifest at least two of the following paragraph B criteria limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) or repeated episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

The ALJ determined that Manos did not satisfy at least two of the paragraph B criteria. Tr. 23. Regarding the second criterion, the ALJ found that Manos had only mild difficulties in social functioning during the relevant time period, that Manos testified to being "pretty social," and that the prison records showed that Manos got along well with other inmates and prison staff. Tr. 22 (citing Tr. 77, 395). Further, regarding the third criterion, and based on the psychiatric evidence of record, the ALJ found that Manos showed only mild difficulties with concentration, persistence, or pace. Tr. 22–23 (citing Tr. 74, 393, 398). Finally, regarding the fourth criterion, the ALJ found that the record does not show Manos experienced any episodes of decompensation of extended duration during the relevant time period. Tr. 23. Thus, the ALJ determined, Manos was unable to show that he met or satisfied at least two of the paragraph B criteria.

### B.    Dr. Duckler's Comment Regarding B Criteria

Manos's first argument focuses on a single statement in the testimony of Dr. Duckler, to which the ALJ generally accorded significant weight. At the first hearing, Dr. Duckler stated that

findings contained within a prior report reflected that Manos met the paragraph B criteria for

Listing 12.07.  Pl.'s Brief, #13, 5.  In his opinion, the ALJ did not specifically acknowledge Dr.

Duckler's statement regarding the paragraph B criteria during his step two analysis and only

assessed Dr. Duckler's opinion, excluding that statement, at the third step of the evaluative

process.  Tr. 22.   Therefore, Manos argues, the ALJ effectively rejected that portion of Dr.

Duckler's testimony.

      Had Dr. Duckler actually opined that Manos met the Paragraph B criteria, this "rejection"

in itself would constitute reversible error.  However, the record does not support Manos's

characterization of Dr. Duckler's testimony.  While Manos correctly identifies that Dr. Duckler

indeed stated that "[Manos] met the B criteria," Tr. 81, the context in which he did so is crucial

to this analysis.

      At the hearing, the ALJ asked Dr. Duckler to summarize his interpretation of Dr.

Johnston's records from March 1996, in which Dr. Johnston was summarizing routine inmate

testing performed in December 1995.  Tr. 81, 396.  In response to a statement made by the ALJ

that he was "not going to ask [Dr. Duckler's] opinion with respect to the mental health

impairments as far as meeting or equaling any listing," Dr. Duckler responded "I'm not a

psychiatrist or a psychologist."  Tr. 83.  Further, Dr. Duckler noted that, during the relevant time

period, Manos "needed a more thorough mental examination for his mental status" and that the

report he summarized was itself merely summarizing "a tentative diagnosis."  Tr. 83.  As the

Commissioner correctly identifies, the report that Dr. Johnston had analyzed and discussed in the

report on which Dr. Duckler based his paragraph B criteria statement actually offers the

following disclaimer: "the diagnostic and treatment suggestions below should be considered as

Page 15 - OPINION AND ORDER

hypotheses which should be confirmed or ruled out following examination by a qualified professional." Tr. 400. The hypothetical results report even indicates that Manos failed to complete all items for the diagnostic test. *Id.*

In determining whether the ALJ erred, I must review only the adequacy of the reasons specified by the ALJ for accepting or rejecting medical opinions, and not the *post hoc* contentions of the Commissioner explaining rejections. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Ninth Circuit has held that an ALJ's rejection of a doctor's opinion was error and not supported by substantial evidence where the ALJ selectively focused on aspects of the medical opinion suggesting non-disability. *See Edlund v. Massanari*, 253 F.3d 1152, 1158–60 (9th Cir. 2001). However, the Ninth Circuit has also stated that "reviewing courts are not deprived of [their] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). The ALJ, in assessing whether Manos met the paragraph B criteria, provided exhaustive reasons to support his finding that Manos did not meet the criteria supported by substantial evidence in the medical records from Manos's treating psychiatrist during the relevant time period. Tr. 23. I therefore conclude from the ALJ's opinion, the contents of the hearing transcript of record, and the relevant clinical evidence that the ALJ did not consider Dr. Duckler to have opined on his own behalf that Manos met the paragraph B criteria and was instead merely providing his interpretation of the contents of a report. This is well supported by Dr. Duckler's subsequent backtracking regarding both his mental health credentials and the reliability of the report he was then summarizing. Tr. 83. Manos acknowledges these factors in his reply, but merely posits that the fact Dr. Duckler uttered words

regarding paragraph B criteria "required more attention than the ALJ paid." Reply, #15, 2. This is unavailing. *See Treichler v. Commissioner*, 775 F.3d 1090, 1098 (9th Cir. 2014) (reviewing courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

Given the context of Dr. Duckler's statement regarding the paragraph B criteria, primarily his acknowledgment that he had simply reviewed a tentative diagnosis and that he does not specialize in psychiatry or psychology, the ALJ's Listing 12.07 finding was not erroneous. In subsequent steps of the evaluative process, the ALJ relied on and provided a detailed summary of Dr. Duckler's medical opinion, including his statements regarding Manos's personality disorder with antisocial behavior; Manos's pseudoseizure diagnosis and the related examinations made pursuant thereto; Manos's physical injuries including his left should rotator cuff and right shoulder clavicle fracture; and the general consistency of Dr. Duckler's opinion and the record as a whole. Tr. 27. The ALJ therefore at no point rejected Dr. Duckler's medical opinion.

For the foregoing reasons, I find that the ALJ did not err in omitting Dr. Duckler's statement regarding Listing 12.07 and the paragraph B criteria from his analysis.

### C.    The ALJ's Failure to Develop the Record Regarding Pseudoseizures

Manos argues, in the alternative, that the ALJ erred by failing to further develop the record regarding the nature of his pseudoseizures to better understand their potential severity for Listing 12.07 and their effect on the assessment of Manos's RFC. Manos points to the fact that 20 C.F.R. § 404.1519a requires the Commissioner to purchase a consultative examination when additional evidence is needed which is not currently contained in the medical record. Pl.'s Brief, #13, 6. Manos further posits that

> Due to the lack of medical expert testimony as to the impact of the specific psychological impact of plaintiff's condition and the evidence supporting the possibility of listing-level severity of a complex and rare condition, remand for further consideration of the mental aspects of this case is warranted.

Pl.'s Brief, #13, 7.

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). It is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," however, that the duty to "conduct an appropriate inquiry" is triggered. *Id.* To develop the record, an ALJ is required to take every reasonable effort to help a claimant get medical reports from his own medical sources. 20 C.F.R. § 404.1512. The ALJ also has discretion to send a claimant for a consultative examination. 20 C.F.R. § 404.1519.

As a preliminary matter, the Commissioner argues that Manos fails to explain how a consultative examination performed at this time will develop the record in a way that assists in a determination regarding the relevant time period. Def.'s Response, #14, 11. I agree with this logic and limit my analysis to Manos's argument stating that "further evidence from a psychological medical expert would have served to further develop the record in light of a complex and not well-explained disorder such as pseudo seizures." Pl.'s Reply, #15, 2.

I agree with Manos that this record requires further development on the topic of pseudoseizures. At the first hearing, Dr. Duckler provided testimony regarding seizures related to epilepsy, but did not speak to the nature or details of pseudoseizures to a satisfactory extent. Tr. 84–87. Notably, the ALJ expressed his disappointment with Dr. Duckler's largely unhelpful

testimony and admitted "it would be a good idea to set . . . a supplemental hearing with a

neurologist . . . ." Tr. 98. At the second hearing, Dr. Huntley testified that "[t]he record is rife

with lots of seizures" that "could all be psychological . . . ." Tr. 61. Before expanding his

opinion, however, Dr. Huntley was called away. Tr. 62. At the third hearing, Dr. Huntley

returned and testified at length regarding the distinction between "real" physical seizures deriving

from epilepsy and pseudoseizures, which are purely psychogenic seizures that occur in response

to environmental pressures and, possibly, traumatic events. Tr. 40–47. Dr. Huntley did not

testify as to the specific psychological impact of pseudoseizures or the possibility of the listing-

level severity of Manos's condition.

In the course of the ALJ's examination of Dr. Huntley at the third hearing, the ALJ

admitted that he "get[s] really confused about . . . who's qualified to testify about 12.07 issues"

and "generally speaking [he does not] allow . . . medical experts who are not psychologists or

psychiatrists to testify about mental health conditions." Tr. 41. Even with that cautious

approach, the ALJ stated that "I think sometimes it can be helpful to get a medical doctor

testimony" to assist in evaluating Listing 12.07 issues. Tr. 41. Even given three separate

hearings and extensive testimony by medical experts, I find that the ALJ nonetheless improperly

limited development of the record regarding a complex psychological condition to testimony

from medical professionals who, despite being qualified in other fields, admitted to having a

limited range of knowledge regarding pseudoseizures, a primary condition suffered by Manos

during the relevant time period. While Dr. Huntley's testimony provided a clear understanding

of the medical distinction between psychological and physical seizures, it did not clarify whether

psychological pseudo seizures could be incapacitating to an extent that would warrant a disability

Page 19 - OPINION AND ORDER

finding under Listing 12.07 or would somehow influence Manos's RFC.

Importantly, Dr. Huntley qualified his testimony about Manos's various conditions with a clear indication that he believes Manos possibly met Listing 12.07 during the relevant time period due to his frequent pseudoseizures. Tr. 48. Dr. Huntley further unequivocally suggested that the record should be further developed by a psychologist or a psychiatrist. *Id.* Following Dr. Huntley's testimony distinguishing pseudoseizures from epileptic episodes, counsel for Manos asked:

> Counsel: So you're saying he meets 12.07? Is that . . . I'm not quite sure what you're saying?
>
> Dr. Huntley: Well I think the . . . that's the listing I could find. Because the verbiage there says . . . I think a psychiatrist should be the person to say whether he's disabled from it.

Tr. 48.

Given the testimony of record, the clear shortage of information in the available medical evidence regarding the psychological impact of Manos's pseudoseizures, and the ALJ's failure to obtain relevant expert testimony that he himself acknowledged to be crucial in his determination on the subject and severity of Manos's frequent pseudoseizures during the relevant time period, the ALJ erred by failing to satisfy his duty to fully develop the record to ensure that all of Manos's relevant interests were considered. *See Tonapetyan v. Halter*, 242 F.3d at 1150. Upon remand, the ALJ should consult a psychological medical expert to further develop the record and augment the ALJ's understanding of the extent of Manos's mental limitations.

## II.    The ALJ's Assessment of Manos's Residual Functional Capacity

Manos next argues that the ALJ erred by failing to include any of the severe mental

impairments found at step two of the evaluative process in his assessment of Manos's RFC. Pl.'s Brief, #13, 7.

The ALJ determines a claimant's RFC at step four of the sequential evaluation process. 20 C.F.R. § 404.1545. In determining an RFC, the ALJ considers "all the relevant evidence in [the] case record." 20 C.F.R. § 404 .1545(a)(1). This includes all of a claimant's "medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). In addition, the ALJ considers "descriptions and observations of [the claimant's] limitations from [his or her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant]." 20 C.F.R. § 404.1545(a)(3). As such, "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); 20 C.F.R. §§ 404.1523, 416.923. To assess a claimant's RFC, the ALJ often poses hypothetical questions to a VE, and those questions must "set out all the limitations and restrictions of the particular claimant . . . ." *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991). If an ALJ's hypothetical does not reflect all of the claimant's limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

The Commissioner notes that the Ninth Circuit, in *Bray* and *Hoopai v. Commissioner*, 499 F.3d 1071, 1077 (9th Cir. 2007), explicitly limited requirements imposed upon ALJs to

consider severe mental impairments when assessing a claimant's RFC. Def.'s Response, #14, 14–15. An ALJ is merely required to consider whether impairments translate into limitations that should be reflected in the modeling of the RFC. 20 C.F.R. § 404.1545. Here, where the ALJ stated that he "carefully consider[ed] . . . the entire record" in assessing Manos's RFC the ALJ has substantially complied with 20 C.F.R. § 404.1545(a)(1) and it is not the province of this court to require more. With this taken into account, however, my finding that the ALJ failed to properly develop the record as to Manos's mental impairments and frequent pseudoseizures renders the ALJ's consideration of the entire record as it currently stands inherently inadequate. Upon remand, the ALJ must reconsider Manos's mental impairments and whether their severity results in limitations upon Manos's ability to perform basic work functions.

## III.    Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when an ALJ's decision is reversed, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy" that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

Page 22 - OPINION AND ORDER

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002).

As explained above, I find that the ALJ failed to fully develop the record in the context Manos's pseudoseizures. Further, the ALJ must reassess Manos's RFC regarding his severe mental impairments to determine whether that those impairments result in limitations that would assist in determining whether Manos was able to perform basic work functions during the relevant time period. Therefore, remand for further proceedings is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying Manos's application for disability and DIB is REVERSED and this case is REMANDED for further proceedings consistent with this opinion. Upon remand, the ALJ should consult a competent psychological medical expert to testify regarding the extent of Manos's mental limitations during the relevant time period. If necessary, the ALJ should adjust his assessment of Manos's RFC in light of that testimony.

IT IS SO ORDERED.

Dated this 23rd day of March, 2015.

Honorable Paul Papak
United States Magistrate Judge